AB:GN
F. #2019R00730

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

- against -

QING FU ZENG,

              Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - X

**FILED UNDER SEAL**

COMPLAINT AND
AFFIDAVIT IN SUPPORT
OF AN ARREST WARRANT

Case No. 19-M-1142

(T. 18, U.S.C., § 545)

EASTERN DISTRICT OF NEW YORK, SS:

        Katherine Kearne, being duly sworn, deposes and states that she is a Special Agent with the United States Department of Homeland Security, Homeland Security Investigations, duly appointed according to law and acting as such.

        In or about and between October 2013 and July 2019, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant QING FU ZENG, also known as "Ray," together with others, did (a) knowingly and willfully, with intent to defraud the United States, smuggle, and clandestinely introduce and attempt to smuggle and clandestinely introduce into the United States merchandise which should have been invoiced, to wit: sneakers, and made out and passed, and attempted to pass, through the customhouse any false, forged, and fraudulent invoice, and other document and paper and (b) knowingly, intentionally and fraudulently import and bring into the United States merchandise contrary to law, and did receive, conceal, buy, sell and

facilitate the transportation, concealment and sale of such merchandise after importation, knowing such merchandise to have been imported and brought into the United States contrary to law, to wit: sneakers, in violation of Title 18, United States Code, Section 542 (prohibiting the entry and introduction "into the commerce of the United States of any imported merchandise by means of any fraudulent [and] false invoice . . . [and] by means of any false statement, written [and] verbal"), and Title 19, United States Code, Section 1526 (prohibiting the importation of merchandise bearing infringing marks).

(Title 18, United States Code, Section 545)

The source of your deponent's information and the grounds for her belief are as follows:[1]

1. I am a Special Agent with the Department of Homeland Security, Homeland Security Investigations ("HSI"), and have been for approximately two years. I am responsible for conducting and assisting in investigations into the activities of individuals and criminal groups responsible for trafficking in counterfeit goods and smuggling. These investigations are conducted in both an undercover and overt capacity. As a result of my training and experience, I am familiar with the techniques and methods of operation used by individuals involved in trafficking in counterfeit goods to conceal their activities from detection by law enforcement authorities.

---

[1] Because the purpose of this Complaint is to set forth only those facts necessary to establish probable cause to arrest, I have not described all the relevant facts and circumstances of which I am aware.

2. I am familiar with the facts and circumstances set forth below from my participation in the investigation, my review of the investigative file, and from reports of other law enforcement officers involved in the investigation.

I. <u>Overview of the Investigation</u>

3. The investigation has revealed that persons in China manufacture goods – such as sneakers – bearing counterfeit marks registered on the Principal Register of the United States Patent and Trademark Office ("Counterfeit Goods"). The Counterfeit Goods are transported by sea to the United States through the ports, including the Port of New York and New Jersey ("PNY/NJ" or the "Port"), in 40-foot shipping containers.

4. Between approximately February 2012 and December 2016, HSI investigators seized the contents of approximately 17 40-foot shipping containers transported by sea from China to the PNY/NJ loaded with boxes of Counterfeit Goods. United States Customs and Border Protection ("CBP") officials, at the HSI investigators' request, allowed five additional containers loaded with boxes of Counterfeit Goods to pass through customs and exit the PNY/NJ.[2] Had the Counterfeit Goods found in these 22 containers been genuine, their total estimated manufacturers' suggested retail price ("estimated MSRP") would have been more than $472,000,000. The manifests for these 22 containers bore false

---

[2] Even though border inspection revealed that containers were loaded with Counterfeit Goods, upon the request of HSI investigators, the containers were allowed to be picked up for delivery to their purported consignees, so investigators could track where the containers were delivered.

information regarding the containers' contents.[3]  For example, the manifests falsely indicated that the containers were primarily loaded with ventilation fans and plastic hangers.

5. Law enforcement agents have identified certain individuals (the "Container Importers") who arranged for the import by sea of Counterfeit Goods from China inside such 40-foot shipping containers. The Container Importers falsely used the identities of legitimate import companies, and provided false content descriptions, on the customs paperwork in order to deceive CBP when importing containers loaded with boxes of Counterfeit Goods.

6. The Container Importers provided customs brokers with, among other things, a consignee company name and contact information for each container.[4]  The phone numbers and email addresses that the Container Importers provided to these brokers, however, did not belong to the fraudulently listed legitimate import companies. Rather, these numbers and addresses belonged to the Container Importers, who provided them to retain control of the shipping containers while concealing their true identities.

7. The phone numbers and email addresses the Container Importers provided to the brokers were "burner"[5] phone numbers and email accounts obtained using false identifiers. Ultimately, the shipping containers loaded with the Counterfeit Goods

---

[3] A manifest is a transportation document containing information regarding the consignor, consignee, origin, destination, value, contents, and other information primarily for use by customs authorities.

[4] Customs brokers are commonly retained by persons importing bulk goods in shipping containers. These brokers, who handle paperwork and ministerial matters, ease and speed the transit of goods through ports such as PNY/NJ.

[5] "Burner" phones refer to those prepaid cellphones with no known subscriber or a subscriber who provides false information to the provider.

were never sent to the legitimate businesses listed on the manifests. Instead, once released from the Port, the containers were shipped to various self-storage facilities within Brooklyn, Queens and Long Island, New York, where their contents were sub-divided for sale and delivery to wholesalers and retailers.

8. Law enforcement agents have linked 107 shipping containers, in addition to the 22 referenced above, to the Container Importers based on, among other things, the containers' nearly identical manifests (i.e., type of goods, number of boxes inside the container, weight) and the fact that the containers were destined for the same recipients.

II. The Defendant

9. The defendant QING FU ZENG, also known as "Ray," is a Chinese national, with no known residence in the United States.

10. On or about December 4, 2019, ZENG flew from Seoul, Korea to McCarran International Airport in Las Vegas, Nevada on Korean Air Flight No. 5, and was admitted to the United States at approximately 7:00 p.m. At this time, there are no travel records indicating that ZENG has left the United States. Upon information and belief, ZENG is currently in Las Vegas.

11. As described in further detail below, there is probable cause to believe that ZENG, together with others, smuggled and conspired to smuggle counterfeit goods into the United States from China through, among other locations, PNY/NJ for delivery to wholesalers of counterfeit goods in, among other places, Brooklyn and Queens, New York. As set forth below, in furtherance of this conspiracy, ZENG registered Internet domain names resembling the Internet domain names of real import businesses and used email addresses associated with the misleading domain names to fraudulently portray himself as a

representative of the real import businesses. Then, using these misleading email addresses and the assumed identities of representatives of real businesses, ZENG provided customs brokers with false documentation for shipping containers filled with counterfeit goods carried on merchant vessels arriving in PNY/NJ. Relying on the false documentation provided by the defendant, customs brokers prepared customs forms to file with CBP containing false and fraudulent information regarding the shipments for import. The false documentation provided to customs brokers by the defendant included manifests of the cargo contained in the shipping containers that misrepresented the true contents and value of the cargo in the shipping containers.

12. Since on or about October 2018, HSI has been working with a cooperating defendant (the "CD"), who has been providing information and proactive assistance in various counterfeit and smuggling investigations. The CD has previously pled guilty, and is presently awaiting sentencing, in connection with his/her arrest and federal prosecution in the Eastern District of New York, for participating in smuggling and counterfeiting violations and has been cooperating with the government in the hope of receiving leniency at sentencing. Information provided by the CD, to date, has proven reliable, and has been corroborated by other independent means.

13. The CD provided information to HSI agents relevant to this complaint. Specifically, the CD informed HSI agents that when he/she participated in certain smuggling and counterfeiting violations, including those described in paragraphs 3 through 8, he/she worked with an individual in China named "Ray" to facilitate those violations, including as early as 2013. According to the CD, "Ray" would provide the CD with legitimate Employer Identification Numbers ("EINs") for companies serving as consignees and contact

information for these companies, which, as described in paragraphs 3 through 8, were in fact, "burner" phone numbers and email accounts obtained using false identifiers. The CD provided HSI agents with the cellular telephone number for "Ray" and informed the HSI agents that he/she had previously met "Ray" in-person.

14. HSI agents ran the telephone number provided by the CD through law enforcement databases, including consular databases, and discovered that the telephone number provided by the CD matched the primary and secondary phone number listed on a B1/B2 visa application to travel to the United States, which was submitted on or about June 12, 2017 by a male individual named "Qingfu Zeng."

15. According to ZENG's June 12, 2017 visa application, ZENG is a Chinese national. In the application, ZENG provided an address in Shenzen, Guangdong, China and stated that he was employed as a Deputy General Manager at Shenzhen Andreusen Investment Co. Ltd. ZENG also listed the telephone number provided by the CD as his primary and secondary phone number.

16. In addition, HSI agents showed the CD the photo of ZENG in ZENG's visa application and the CD identified the photo of ZENG as a photo of the individual he/she knows as "Ray."

17. On or about January 14, 2019, the CD met with an individual ("Individual-1") at Individual-1's store in Flushing, Queens, New York. The CD gave Individual-1 a burner phone number ending in 9243 ("the 9243 Number") for Hang to pass to a contact in China ("Individual 2"). A few days later, the CD met with Individual-1 again and provided Individual-1 with the same burner phone number.

18.     On or about February 28, 2019, Individual 2 made telephone contact with the CD through the 9243 Number.  Individual 2 stated in part, in sum and substance, that "Ray" was in Argentina.  Travel records for ZENG indicate that ZENG entered Argentina in October 2018 and left the country in November 2018.  In addition, on or about March 3, 2019, the CD spoke to "Ray" and "Ray" confirmed that he was in Argentina "last year . . . after August."

19.     On or about March 3, 2019, the CD made contact with "Ray" directly through a new burner phone ending in 3010 (the "3010 Number"), maintaining contact with ZENG through the 3010 Number until on or about March 23, 2019.  The CD then obtained another burner phone ending in 2540 (the "2540 Number"), until on or about May 13, 2019.  The CD then obtained another burner phone ending in 7544 (the "7544 Number"), until on or about July 30, 2019.  The CD finally obtained a burner phone ending in 4781 (the "4781 Number"), which the CD has used to communicate with ZENG since on or about August 3, 2019.  With the consent of the CD, law enforcement agents have recorded calls and text messages made to and from the 9243 Number, the 3010 Number, the 2540 Number the 7544 Number and the 4781 Number.

**A.  Counterfeit Shipment to Port of Los Angeles**

20.     On or about March 9, 2019, ZENG directed the CD to set up a burner phone with a California area code, and ending in 2175 (the "Teh Tung Burner Phone").  Law enforcement has recorded calls made to and from the Teh Tung Burner Phone.  The CD used the Teh Tung Burner Phone to communicate with freight forwarders.

21.     On or about March 10, 2019, ZENG provided the CD with an email address and password for a China-based web email service, ending in the domain name

"tehtungcorp.com." WHOIS[6] record checks indicated that the domain name "tehtung.com" was registered on June 2, 2009, and updated on September 15, 2017, in Guang Dong, China. By contrast, WHOIS record checks indicated that the domain name "tehtungcorp.com" was registered in the past month, on February 27, 2019, in Beijing, China.

22. On or about March 10, 2019, an individual using the email account mhuynh@tehtungcorp.com, believed to be ZENG based upon conversations between the CD and ZENG, sent the CD the Employer Identification Number ("EIN") for a California-based company entitled Teh Tung Corporation. Based on my training and experience, EIN numbers are used by U.S. Customs as discrete identifiers for companies serving as consignees. As described in paragraph 21, email accounts associated with Teh Tung Corporation own and use the domain name "tehtung.com," not "tehtungcorp.com." Further, a review of Teh Tung Corporation's website reveals that the company uses email addresses ending in "polycess.com." The customer service contact name for Teh Tung Corporation is "May Huynh." Upon information and belief, ZENG illegally obtained the EIN for Teh Tung Corporation and created a false corporate email address for Teh Tung Corporation.

23. Thereafter, the CD provided the EIN to the freight forwarder, who requested the number for purposes of filing an Import Security Filing ("ISF"), which is a filing required by CBP that documents importing information and details as a shipment that must be transmitted 24 hours prior to an ocean shipment's departure to the United States.

24. On or about March 11, 2019, ZENG provided the CD with a House Bill of Lading (the "BOL") for a shipment within a 40-foot long shipping container, bearing

---

[6] "WHOIS" is a comprehensive Internet domain database widely used for searching Internet domain names and registration information.

serial number MRKU5487791 (the "Los Angeles Shipping Container"), also for the purpose of filing an ISF. According to the BOL for the shipment within the Los Angeles Shipping Container, the shipment was consigned to a company named Teh Tung Corp. It was manifested as containing napkins with a weight of 11,019 kilograms and was scheduled to arrive into the Port of Los Angeles on April 2, 2019. Also according to the BOL for the shipment within the Los Angeles Shipping Container, the Los Angeles Shipping Container was sent by Guangzhou Jielian Paper Company LIM, a China-based company, aboard a ship from Nanshan, China, destined to Los Angeles, California.

25. On or about April 4, 2019, HSI and CBP officers examined the Los Angeles Shipping Container. Upon opening the tail of the Los Angeles Shipping Container, the HSI and CBP officers discovered two rows of boxes containing generic shoes and, behind that, shoes consistent in appearance with Nike sneakers. An x-ray examination revealed that the entirety of the contents of the Los Angeles Shipping Container were consistent in appearance with either boxes of sneakers or boxes of jeans, not napkins, as the shipment was manifested as containing. At that time, law enforcement agents seized a small sample of those sneakers consistent in appearance with Nike sneakers. Law enforcement, working with an authorized representative of Nike, have since determined that those sneakers are counterfeit.

**B. Counterfeit Shipment to Port of New York and New Jersey**

26. On or about April 8, 2019, ZENG sent a text message to the CD, to the 2540 Number, stating, "CA 91745," which, based on the CD's interactions with ZENG throughout the course of the conspiracy, the CD understood to be a directive to obtain a burner phone number with a California area code consistent with that used within the zip

code 91745. On or about April 21, 2019, the CD sent a text message to ZENG, from the 2540 Number, containing the number of a phone with a California area code ending in 3137 (the "CYS Burner Phone").

27. On or about April 22, 2019, ZENG sent a text message to the CD, to the 2540 Number, stating, "tom@cysexcelinc.com." Law enforcement agents subsequently logged into the "tom@cysexcelinc.com" email account using the same China-based web email service and the same password that the CD had received in connection with "tehtungcorp.com" email address used in the counterfeit shipment to the Port of Los Angeles, described above in paragraphs 21 and 22. Upon logging into the "tom@cysexcelinc.com" email account, law enforcement observed in the inbox an email dated April 22, 2019, from "timothy@cysexcelinc.com" to "tom@cysexcelinc.com," with the subject line "EIN." Based upon my experience in the investigation, including conversations between the CD and ZENG, I believe the owner and/or user of the "timothy@cysexcelinc.com" to be ZENG. Attached to the email was an Internal Revenue Service ("IRS") document, dated April 26, 2010, containing the EIN for a California-based company entitled CYS Excel Inc. ("CYS"). That same document provided a contact for CYS, "Tom Cheung Sole MBR." According to its website, CYS is a decorative glass vase wholesale supplier.

28. WHOIS record checks indicate that the domain name "cysexcelinc.com" was registered on April 8, 2019, in Beijing, China. By contrast, WHOIS record checks indicate that the domain name "cysexcel.com" was registered on April 19, 2001, and last updated on April 19, 2019, in California, United States. Email accounts associated with CYS own and use the domain name "cysexcel.com," not "cysexcelinc.com."

For example, on its website, CYS lists, under the "Contact Us" section, the email address "contact@cysexcel.com." Upon information and belief, ZENG illegally obtained the EIN for CYS and created a false corporate email address for CYS.

29. On or about May 28, 2019, a freight shipping agent, using email address "doc@haiwindworldwide.com" emailed to the email address "tom@cysexcelinc.com" a copy of an arrival notice (the "Arrival Notice") and freight invoice for a shipment within a 40-foot long shipping container, bearing serial number SUDU5931788 (the "New Jersey Shipping Container"), which is an international shipping document issued by freight carrier agents to consignees to inform them of shipment details, charges and documents relating to an impending shipment. The Arrival Notice appears to have been prepared by a California-based company, Hai-Wind Worldwide Inc. According to the Arrival Notice, the New Jersey Shipping Container was consigned to "CYS EXCEL INCORPORATED" located in California, United States. The contact telephone number listed for CYS EXCEL INCORPORATED is the CYS Burner Phone. The shipment within the New Jersey Shipping Container was manifested as containing 1,134 cartons of glass vases with a weight of 8,970 kilograms and was scheduled to arrive in Newark, New Jersey, on June 1, 2019. Also according to the Arrival Notice, the New Jersey Shipping Container was sent by Talent Succeed Ltd., a Hong Kong-based company, aboard a ship from Hong Kong, destined to Newark. CBP records indicated that the New Jersey Shipping Container was 40 feet in length.

30. On or about June 3, 2019, HSI and CBP officers examined the New Jersey Shipping Container. Upon opening the tail of the New Jersey Shipping Container, HSI and CBP officers discovered approximately two rows of boxes containing generic shoes

and, behind that, shoes consistent in appearance with Nike sneakers. An examination revealed that the entirety of the contents of the New Jersey Shipping Container were consistent in appearance with boxes of sneakers, not glass vases, as the shipment was manifested as containing. At that time, law enforcement agents seized a small sample of those shoes consistent in appearance with Nike sneakers. The remainder of the container was shipped, at the direction of ZENG and/or his coconspirators, to a warehouse located in Brooklyn in the Eastern District of New York. Law enforcement, working with an authorized representative of Nike, have since determined that those shoes are counterfeit.

### C. Second Counterfeit Shipment to Port of New York and New Jersey

31. On or about July 22, 2019, a second container, purporting to be consigned to "CYS EXCEL INCORPORATED," arrived in the Port of New York and New Jersey, in or around Newark, New Jersey. CBP records indicate that the contact telephone number listed for CYS EXCEL INCORPORATED is again the CYS Burner Phone, and that the contact email address is "tom@cysexcelinc.com," the same email address ZENG previously provided to the CD in furtherance of the conspiracy, as previously described in paragraphs 26 through 28.

32. Consistent with the New Jersey Shipping Container, the shipment within this container was manifested as containing 1,114 cartons of glass vases with a weight of 8,794 kilograms. Moreover, as with the New Jersey Shipping Container, CBP records indicate that the container was sent by Talent Succeed Ltd., a Hong Kong-based company, aboard a ship from Hong Kong, destined to Newark. Law enforcement officers examined the tail of the container, examined three rows of the container and discovered shoes consistent in appearance with Nike and Louis Vuitton sneakers. An x-ray examination

revealed that the entirety of the contents of the container was consistent in appearance with sneakers, not vases, as the shipment was manifested as containing. At that time, law enforcement agents seized a small sample of those shoes consistent in appearance with Nike and Louis Vuitton sneakers. The remainder of the container was shipped, at the direction of ZENG and/or his coconspirators, to a warehouse located in Long Island City in the Eastern District of New York. Law enforcement, working with an authorized representative of Nike and Louis Vuitton, have since determined that those shoes are counterfeit.

### D. Payments From the Defendant to the CD

33. Based on conversations with the CD, HSI agents learned that ZENG pays the CD for his/her role in facilitating the smuggling of counterfeit goods into the United States via Chinese bank debit cards. On or about March 3, 2019, the CD made contact with "Ray" and the two discussed the payment of money to the CD. On or about March 4, 2019, the CD provided an undercover mailing address to "Ray." On or about April 5, 2019, HSI agents retrieved a package from the undercover mailing address, addressed to the CD's alias. The label on the package also included a Chinese phone number that upon review, matches a phone number that the CD previously used to contact "Ray." Upon opening the package, HSI agents discovered two Chinese bank debit cards, and law enforcement officers subsequently withdrew approximately a total of $4,150 in United States currency from the debit cards. Upon information and belief, HSI agents believe that the debit cards were sent from ZENG to the CD for payment for the CD's role in facilitating the smuggling of counterfeit goods into the United States via Chinese bank debit cards. Based on conversations with the CD, HSI agents learned that these debit cards could be remotely refilled in China.

34. On or about March 27, 2019, "Ray" was provided a second undercover mailing address for the CD. On or about April 10, 2019, HSI agents retrieved a second package, once again addressed to the CD's alias, at the location of the second undercover mailing address. The label on this package included Chinese characters, which law enforcement officers believe is ZENG's Chinese name. Upon opening the package, law enforcement officers discovered two Chinese bank debit cards as well as a smart card used for transportation within Argentina. HSI agents subsequently withdrew approximately a total of $3,660 in United States currency from the debit cards found in the second package. Upon information and belief, HSI agents believe that the debit cards were also sent from ZENG to the CD for payment for the CD's role in facilitating the smuggling of counterfeit goods into the United States via Chinese bank debit cards.

35. On or about June 10, 2019 and June 17, 2019, HSI agents withdrew $3,500 from two of the previous debit cards.

36. It is respectfully requested that this Court issue an order sealing, until further order of the Court, the Complaint and Arrest Warrant. If the defendant were to become aware of the contents of this Complaint and the issuance of a warrant for his arrest before he could be taken into custody, he would have an opportunity to flee prosecution and destroy or tamper with evidence.

WHEREFORE, your deponent respectfully requests that the defendant QING FU ZENG, also known as "Ray," be dealt with according to law.

_____
Katherine Kearney
Special Agent
United States Department of Homeland Security
Homeland Security Investigations

Sworn to before me this
6th day of December, 2019

_____ s/Bulsara
THE HONORABLE
UNITED STATES
EASTERN DISTRI